# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

MI AE DECOVICH,

        Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,

        Defendant.

Case No. 2:14-cv-00394-RCJ-CWH

**ORDER**

This matter was referred to the undersigned Magistrate Judge for a report of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B)-(C)) and Local Rule IB 1-4. The case involves review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Mi Ae Decovich's application for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Act. 42 U.S.C. Ch. 7. The Court has reviewed Plaintiff's Motion for Reversal/Remand (#15), filed July 3, 2014, and the Commissioner's Opposition and Cross-Motion to Affirm the Commissioner's Decision (#16), filed July 31, 2014.

## BACKGROUND

**I.**    **Procedural History**

On June 24, 2010, Plaintiff protectively filed an application for a period of disability and disability insurance benefits alleging she became disabled on September 27, 2009. (AR 159-166).[1] Her claims were denied initially on September 29, 2010, and upon reconsideration on February 7, 2011. (AR 101-105, 109-112). On March 14, 2012, Plaintiff appeared for a hearing before Administrative Law Judge ("ALJ") David K. Gatto. (AR 117-118). On April 17, 2012, the ALJ issued an unfavorable decision finding Plaintiff had not been under a disability, as defined in the Social Security Act, from June 17, 2010 through the date of the decision. (AR 29-41). The ALJ's decision

---

[1] A.R. refers to the Administrative Record in this matter. (Notice of Manual Filing #14.)

became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. (AR 1-7). On April 4, 2014, Plaintiff timely commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (#3.)

## II.  The ALJ Decision

The ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R. § 404.1520 and issued an unfavorable decision on April 17, 2012. (AR 29-41). At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, and had not engaged in substantial gainful activity ("SGA") from September 27, 2009, the alleged onset date. (AR 31, Findings 1-2).  At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, chronic arthralgias of multiple joints, history of migraine headaches, history of abdominal pain, left-sided rib fracture, depressive disorder NOS, and generalized anxiety disorder. (AR 31, Finding 3). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 32, Finding 4).

The ALJ found Plaintiff capable of performing a residual functional capacity ("RFC") to perform a range of medium work as defined in 20 CFR §§ 404.1567( c), 416.967( c), and SSR 83-10 specifically as follows:  the claimant can lift and/or carry 50 pounds occasionally and 25 pounds frequently; she can stand and/or walk for six hours out of an eight-hour workday with regular breaks; she can sit for six hours out of an eight-hour workday with regular breaks; she is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying; she is limited to unskilled work with no rapid or frequent changes to work routine due to reduced stress tolerance. (AR 34, Finding 5).

At step four, the ALJ found Plaintiff unable to perform her past relevant work ("PRW") as a gambling dealer. (AR 39, Finding 6). The claimant was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advance age. (AR 39, Finding 7). The ALJ found that claimant has at least a high school education and is able to communicate in English. (AR 39, Finding 8). The ALJ found that transferability of job skills is not material to the determination of disability because applying the Medical -Vocational Rules directly supports a finding that the claimant is "not disabled," whether

or not the claimant has transferrable job skills. (AR 39, Finding 9). Considering the claimant's age, education, work experience, and residual functional capacity, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform. (AR 39, Finding 10). Based on all of these findings, the ALJ found Plaintiff was not under a disability from September 27, 2009 through the date of the ALJ's decision. (AR 24, Finding 11).

## DISCUSSION

### I.  Judicial Standard of Review

Administrative decisions in social security disability benefits cases are reviewed pursuant to 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews a decision affirming, modifying or reversing a decision of the Commissioner *de novo*. *See Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *see also Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Flaten v. Sec'y of Health and Human Serv.,* 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

## II.   Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Batson*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work

activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. 20 C.F.R. § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to the step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[2] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can

---

[2] SSRs constitute SSA's official interpretations of the statute it administers and its regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Social Security Act and regulations. *Bray*, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

Step four requires the ALJ to determine whether the individual has the RFC to perform her pas relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to Step five.

The fifth and final step, requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

### III.   Analysis and Findings

Plaintiff seeks reversal of the ALJ's decision for three reasons. Plaintiff claims that the ALJ failed to provide specific and legitimate reasons for rejecting the treating physicians opinions. She claims that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony. Lastly, she argues that the ALJ deviated from the DOT without explanation.

**A.  The ALJ's rejection of the treating physicians' opinions**.

In making his RFC finding, the ALJ properly gave little weight to the opinions of treating

physicians Edward K. Tsai, D.O., and Maria Gaerlan, M.D., relying instead on a consultative examiner and two state agency physicians. (AR 37). Plaintiff argues that the ALJ failed to provide sufficient reasons for rejecting the treating physicians' opinions and, in particular, failed to consider the debilitating effect of fibromyalgia. The government disagrees, arguing that ALJ properly gave little weight to the treating physicians' opinions because the opinions were not supported by the medical evidence of record as a whole.

Plaintiff argues that fibromyalgia is a unique disease, especially because its symptoms are entirely subjective, and there are no objective tests to determine its severity. SSR 12-2p. The analysis of whether the ALJ properly considered the severity of Plaintiff's fibromyalgia depends on the entire record. *Id*. ("If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms. ... We will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning.")

The "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) quoting *Bray v. Astrue*, 554 F.3d 1219, 1228 (9th Cir. 2009). The ALJ may properly decide the weight to be given to the opinions of a treating physician based upon whether the physician's opinions are supported by the medical evidence of record as a whole. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight will be given to that opinion).

Here, the ALJ adequately explained why he gave little weight to the treating physicians' opinions. (AR 38). The ALJ noted that Dr. Tsai failed to discuss the objective medical findings that supported his opinions, which were highly inconsistent with the medical evidence of record. *Id*. See *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give more weight to

7

opinions that are explained than to those that are not"). The ALJ discussed the objective medical evidence which showed largely normal findings. (AR 35-36). The ALJ noted that in October 2009, Plaintiff underwent a neurological consultation. (AR 322). Plaintiff underwent a number of diagnostic tests, including but not limited to MRIs of her brain, cervical spine, lumbar spine, as well as a nerve conduction study and an electromyogram. (AR 340-53). These tests showed largely normal results. (AR 340-53). In late 2009, Plaintiff underwent computerized topography (CT) scan of her abdomen, which yielded unremarkable results. (AR 659). In April 2010, Plaintiff underwent an upper endoscopy, which revealed normal findings. (AR 35, 355). A CT scan of Plaintiff's abdomen and pelvis revealed that her spleen, pancreas, kidneys, and adrenals all appeared normal. (AR 35, 364). The ALJ further noted that in July 2010, a physical exam showed that Plaintiff had a normal gait, and x-rays of her cervical spine were normal. (AR 35, 727). A neurological follow-up, also in July 2010, showed that Plaintiff had normal gait, sensory system, reflexes, motor strength, and no muscle atrophy. (AR 35-36, 722-23). Additionally, x-rays of Plaintiff's cervical spine from October 2010 were normal. (AR 36, 484).

Later treatment evidence was consistent. The ALJ noted that follow-up appointments from February through April 2011 showed that Plaintiff's cervical spine had a normal range of motion, and there were no significant findings. (AR 36, 742-45). An exam in July 2011 noted that Plaintiff had a normal gait and no apparent general, respiratory, or cardiovascular abnormalities. (AR 710). A follow-up appointment in January 2012 further supported the unremarkable physical examination results. (AR 741). Because Dr. Tsai failed to show how the evidence supported his opinions, the Court concludes that the ALJ's decision to give little weight to Dr. Tsai's opinions and proposed limitations was appropriate and is supported by substantial evidence. (AR 38).

The ALJ similarly considered the physical function capacity form completed by Dr. Maria Gaerlan in February 2012. (AR 38, 748-50). The ALJ noted that not only was Dr. Gaerlan's opinion unsupported by the objective evidence, it was a checklist-style form, almost entirely lacking in explanation. (AR 38, 748-50). *See Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (We have held that the ALJ may "permissibly reject[ ] ... check-off reports that [do] not contain any explanation of the bases of their conclusions.").

Finally, the ALJ noted that he is not bound by the treating physician's opinion with respect to

the existence of an impairment or the ultimate determination of disability." *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1194-95 (9th Cir. 2004). That decision is left to the ALJ. Moreover, the ALJ explained why he relied on the opinions of a consultative expert physician. The reports of consultative experts constitute substantial evidence because of their independent clinical findings. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides "independent clinical findings that differ from the findings of the treating physician," such findings constitute "substantial evidence"). 20 C.F.R. § 416.927(e)(2)(i) provides that "[s]tate agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." *See Bray v. Astrue*, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (finding the ALJ properly relied "in large part on the DDS [i.e., State agency] physician's assessment" in formulating RFC).

The ALJ properly gave great weight to the consultative examiner, Dr. David Mumford, who conducted a thorough medical records review as well as physical examination of the Plaintiff. Based on his examination, Dr. Mumford found that while Plaintiff had subjective complaints of pain in the neck and back, examination revealed "no objective evidence that would suggest any significant disease." (AR 37, 434-40). Similarly, the ALJ discussed the findings of Dr. Partee, who found that despite "chronic neck and back pain," Plaintiff retained the capacity to perform a full range of medium work. (AR 37, 472-75). The ALJ also discussed the findings of Dr. Elsie Villaflor, who reviewed Plaintiff's medical records in February 2011 and also opined that despite "chronic neck/back pain," Plaintiff retained the ability to perform a full range of medium work. (AR 37, 530-34).

Accordingly, the Court concludes that the ALJ properly rejected the unsupported opinions of treating physicians Tsai and Gaerlan for legally valid reasons, and relied instead on the consistent and supported opinions of Drs. Mumford, Partee, and Villaflor.

**B.  The ALJ's Adverse Credibility Finding**

Plaintiff argues that the ALJ improperly assessed her credibility. The Commissioner disagrees, arguing that the ALJ properly found Plaintiff not credible. The Court finds that the ALJ's credibility finding with respect to Plaintiff's subjective complaints of symptoms and functional limitations was supported by substantial evidence. The ALJ's assessment of credibility is entitled to "great weight."

*Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989). The ALJ is required to engage in a two-step analysis to evaluate credibility: (1) determine whether the individual presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged and, if so, with no evidence of malingering, and (2) reject the individuals's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). To support a finding of less than fully credible, the ALJ is required to point to specific facts in the record that demonstrate that the individual's symptoms are less severe than she claims. *Id* at 592.

In finding Plaintiff not credible, the ALJ cited three reasons. First, the ALJ explained that Plaintiff's subjective complaints were out of proportion with the mild objective evidence of record. The medical evidence showed largely normal findings that strongly contradicted Plaintiff's extensive complaints of debilitating symptoms. (AR 35). Although lack of objective evidence supporting claimant's symptoms cannot be the sole basis for discounting symptom testimony, *Fair v. Bowen,* 885 F.2d 597, 602 (9th Cir. 1989), the ALJ may consider it as one factor in the credibility analysis. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999) (ALJ properly considered conflict between claimant's subjective complaints and the medical evidence where he found that medical evidence did not support claimant's complaints).

Second, the ALJ considered that Plaintiff engaged in only routine care and monitoring. (AR 35). SSR 96-7p provides that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment).

Third, the ALJ explained that the record showed Plaintiff had a long history of chronic narcotic overuse and opioid dependence. (AR 35). The ALJ may properly consider evidence a claimant has engaged in drug-seeking when evaluating their credibility. *Thomas v. Barnhart*, 278 F.3d 948, 959 (9th Cir. 2002). Moreover, the ALJ noted that, while testifying, Plaintiff "conspicuously overlooked" her "extensive history of chronic narcotic overuse and opioid dependence." (AR 35). The ALJ may consider a claimant's inconsistent statements regarding her drug use to find that "this lack of candor carries over to her description of physical pain." *Thomas,* 278 F.3d at 959. "If the ALJ's [credibility]

finding is supported by substantial evidence, the court may not engage in second-guessing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). Despite Plaintiff's argument to the contrary, the ALJ provided clear and convincing reasons supporting the credibility finding.

### C. The ALJ's Decision regarding the Dictionary of Occupational Titles ("DOT")

The ALJ found that Plaintiff had at least a high school education and could communicate in English because during the hearing, she often answered questions in English without the need for interpretation. Additionally, during the consultative examination Plaintiff was able to speak full English sentences after she relaxed. (AR 39). In his step five finding, the ALJ found that Plaintiff could perform the requirements of the three sample jobs, all of which require a language level of one.

Plaintiff argues that she is unable to read English very well and only understands easy words, and there is insufficient evidence that Plaintiff can meet the basic level of linguistic proficiency. (AR 229, 186, 120-121, 212). Plaintiff argues that, therefore, there was a conflict with the DOT, which defines the various levels of language development. Language development level one is used to represent jobs in the nation with the lowest language aptitude requirements. Plaintiff claims that she was incapable of performing jobs with a language level of one, and the ALJ failed to obtain an explanation from the vocational expert (VE). The Commissioner responds that the ALJ properly found that Plaintiff has a reasonable grasp of the English language and, therefore, could perform other jobs existing in significant numbers in the national economy. The Commissioner also argues that if one is disabled because of linguistic limitations, then many individuals would be incapable of working, regardless of any other physical or mental capabilities.

Language level one, described under the category of general educational development in the DOT, Appendix C, contains three distinct elements: reading, writing, and speaking. It indicates that one should be able to recognize meaning of 2,500 words, read at a rate of 95-120 words per minute, and compare similarities and differences between words and between series of numbers. It indicates that one should be able to print simple sentences containing subject, verb, and object, and series of numbers, names and addresses, and should be able to speak simple sentences, using normal word order and present and past tenses.

The ALJ supported his finding that Plaintiff is able to communicate in English by citing to the consultative examination in August 2010, where Dr. Mumford noted that while initially Plaintiff was

shy, by the "conclusion of the examination she was speaking in full English sentences and laughing appropriately." (AR 436). Additionally, he noted that at the administrative hearing, while Plaintiff had an interpreter, "she often answered questions in English without the need for interpretation." (AR 39). The record also reveals, however, that Plaintiff has limited language ability and that Plaintiff used the services of a translator both at the hearing and at other times, including when meeting with Dr. Yao. (AR 442). The ALJ made no comment regarding Plaintiff's ability to read or write English.

As the Commissioner points out, to find that Plaintiff could not perform work because it requires level-one language development (the lowest level ),[3] and Plaintiff has limited reading and writing skill, would be to find Plaintiffs who speak but do not write or read English *per se* disabled regardless of their work history.  Such a result is both "illogical and in direct contradiction to Social Security regulations." *Meza v. Astrue*, 2011 U.S. Dist. LEXIS 339 at *21 (N.D. Cal. Jan. 4, 2011) (citation omitted) (rejecting argument that illiterate, Spanish-speaking Plaintiff incapable of performing work requiring level-one language development, and collecting cases); *Landeros v. Astrue*, 2012 U.S. Dist. LEXIS 93831 (C.D. Cal. July 6, 2012) (same); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.16 (stating that a younger individual who is illiterate or unable to communicate in English and who is unskilled or has no prior work experience is not automatically disabled); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("A claimant is not per se disabled if he or she is illiterate.").  It also is belied by Plaintiff's former gainful employment as a gambling dealer in Las Vegas, as well as a licensed beautician.  (AR 79).

Additionally, the ALJ found that Plaintiff was able to communicate effectively in English, and therefore did not include language limitations in his hypothetical or in his step-four analysis, except to refer to Plaintiff's education as being "at least a high school education." Plaintiff's language limitation was not one of the disabilities upon which Plaintiff based her claims and, therefore, the ALJ had no duty to address it.  *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (claimant has burden to produce evidence regarding claimed disability).  Moreover, at the hearing, Plaintiff's attorney cross-examined the VE but did not challenge the VE's representation that his testimony comported with the DOT. (AR 82-86).  The ALJ's reliance on the VE's testimony was proper because his

---

[3] S*ee Donahue v. Barnhart*, 279 F.3d 441, 444-45 (7th Cir. 2002) (noting that every job listed in the DOT requires at least level-one language skills).

testimony was uncontradicted. *See Solorzano v. Astrue*, 2012 U.S. Dist. LEXIS 4059 (C.D. Cal. Jan. 10, 2012) (rejecting plaintiff's argument that "apparent conflicts" existed between VE's testimony and DOT in part because plaintiff's counsel failed to question VE about any such conflicts). Accordingly, the ALJ met his obligations under *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) and SSR 00-4p to investigate potential conflicts with the DOT, and the ALJ's reliance on the VE's testimony was proper. *See Mickelson-Wurm v. Comm'r, Soc. Sec. Admin.*, 285 F. App'x 482, 486 (9th Cir. 2008) ("The ALJ must clarify the discrepancy in the opinion only where there is an apparent unresolved conflict that arises between the vocational expert's testimony and the DOT.") (emphasis in original)).

### IV.  Conclusion and Recommendation

Accordingly, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal or Remand (#15) be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendant's Cross-Motion to Affirm (#16) be **granted.**

### V.  Notice

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The U.S. Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. Thomas v. Arn, 474 U.S. 140, 142 (1985). This circuit has also held that failure to file objections within the specified time, and failure to properly address and brief the objectionable issues, waives the right to appeal the district court's order and/or appeal factual issues from the order. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991); Britt v. Simi Valley United Sch. Dist., 708 F.2d 452, 454 (9th Cir. 1983).

DATED: May 21, 2015.

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**